# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN D. LISLE, JR., <br> # R-40159, <br><br>                 Plaintiff, <br><br> vs. <br><br> KIMBERLY BUTLER, DUNBAR, <br> HOFF, KENTE BROOKMAN, <br> J. DIERCKS, SGT. HARRIS, <br> MAJOR DUN, LASHBROOK, <br> SGT. MURRAY, LT. BEST, <br> LAMINAK, JOHN/JANE DOES, <br> LORI OAKLEY, LT. EOVAIDI, <br> MISSTY THOMPSON, and <br> T.S. KEEN, <br><br>                 Defendants. | Case No. 16-cv-00421-MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Steven Lisle, Jr., currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

The matter is now before the Court for review of Plaintiff's complaint. (Doc. 1). Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

1

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

The events giving rise to this action occurred while Plaintiff was incarcerated at Menard Correctional Center ("Menard"). In November 2014, Defendants Dunbar and Harris, correctional officers at Menard, approached Plaintiff and told him if he continued "to bitch and complain and file grievances" that they would make his stay at Menard "hell." (Doc. 1, p. 3). Plaintiff had previously filed grievances complaining about the grievance procedure process and racial discrimination against African-Americans at Menard. *Id*. Around that time, Plaintiff sent a letter to the John Howard Association, a legal organization, regarding issues he was experiencing at Menard. Soon after, Defendants Eovaidi, Harris, Laminak, and Dunbar talked to Plaintiff about his correspondence with the John Howard Association and threatened to kill him

if he did not stop writing grievances and complaining to others about Menard. *Id*. at 3-4. Defendant Harris then told Plaintiff that he had connections with the Bureau of Identification ("Bureau") and that he could "put a cold case" on him. *Id*. at 4.

On December 26, 2014, Plaintiff was called to the Bureau. Defendant Diercks, an officer working for the Bureau, told Plaintiff that he needed him to provide a DNA profile. *Id*. Recalling what Defendant Harris had recently threatened, Plaintiff asked Defendant Diercks why that was necessary since Plaintiff had already provided a DNA sample pursuant to an order entered at his sentencing in 2004. *Id*. When Plaintiff asked to see a search warrant or document from the Illinois State Police verifying that he needed to submit another DNA sample, Defendant Diercks responded that he could take Plaintiff's DNA profile "whenever or however" he wanted to and that as a convicted felon, Plaintiff was a ward of the state, which meant that he was state property. *Id*. at 5. Defendant Diercks then called in Defendant Dun, who told Plaintiff that he could not refuse a DNA test. *Id*. Plaintiff asked Defendant Dun to provide some documentation to prove that the order came from the Illinois State Police. *Id*. Defendant Dun told Plaintiff that he did not have to provide any documentation that a second test was required and demanded that Plaintiff submit to the test. Plaintiff continued to refuse to provide a sample absent documentation that the request was legitimate, and finally Defendant Dun ordered Plaintiff to be taken to segregation for refusing to provide a DNA sample. *Id*. When Plaintiff protested that Defendant Dun was violating his constitutional rights, Defendant Dun told him to "shut the fuck up" and "fuck your rights." *Id*. at 5-6. Plaintiff was then escorted to the North II segregation unit.

Later that evening while in segregation, Plaintiff stopped Defendant Laminak, who was working the unit. Defendant Laminak also happened to be one of the correctional officers who

had previously threatened to harm Plaintiff if he continued to file grievances. Plaintiff asked to see a crisis counselor and informed Laminak that he was going to kill himself because Menard employees were trying to put a criminal case on him. *Id*. at 6. Laminak told Plaintiff that he was not going to help him out because Plaintiff had dug himself into a hole by filing grievances. *Id*. A little later, when a nurse was making her rounds, Plaintiff stopped her and told her that he was planning to kill himself. The nurse told Defendant Laminak that she was going to have to report that Plaintiff had threatened to kill himself. *Id*. Defendant Laminak then called Defendant Harris, who came to Plaintiff's cell and threatened "to put some paperwork" on Plaintiff. *Id*. Defendants Laminak and Harris then took Plaintiff to the healthcare unit, stripped him naked, placed him in a crisis cell, and turned off the water supply to the cell for an unspecified period of time. *Id*.

Plaintiff was issued two disciplinary tickets as a result of the events that occurred on December 26, 2014. In the first ticket, Plaintiff was charged with disobeying a direct order and violating state law by refusing to provide a DNA sample. (*See* Ex. 16). In the second ticket, Plaintiff was charged with damaging property, insolence, and disobeying a direct order. (*See* Ex. 2). As to the second ticket, Defendants Laminak and Harris claimed that Plaintiff had torn up his mattress while he was in segregation prior to his request to be placed on crisis watch. (Doc. 1, p. 7). Plaintiff insists that the second ticket was completely fabricated by Defendants Laminak and Harris in order to retaliate against him for requesting to be placed on suicide watch. *Id*.

A few days later, Plaintiff appeared before the adjustment hearing committee on both tickets. *Id*. Plaintiff pled not guilty to the first ticket and explained to Defendant Brookman, chair of the committee, why he had refused to provide a DNA sample. Plaintiff asserts that Defendant Brookman verbally agreed with Plaintiff and told him that he was going to dismiss the

4

ticket. *Id*. But according to the final summary report of the hearing, Plaintiff was found not guilty of disobeying a direct order, but guilty of violating state law, even though the decision notes that Plaintiff did provide a DNA sample in 2004 and makes no mention of the test being inadequate. (*See* Ex. 16). Plaintiff's punishment on this ticket was a "verbal reprimand." *Id*.

On the second ticket, Plaintiff pled not guilty to the charges of destroying property, insolence, and disobeying a direct order. (Doc. 1, p. 7). He told the committee that charges were fabricated and the ticket was issued in retaliation for Plaintiff requesting to be placed on suicide watch. Plaintiff asked to call the nurse who was present at the time of the incident and explained that because he did not have access to a pen prior to the hearing, he had been unable to put his request to call a witness in writing. *Id*. Defendant Brookman refused to call Plaintiff's witness and told Plaintiff that he would not send Plaintiff to segregation if he would pay $55.00 to replace the mattress. *Id*. Plaintiff insisted that he had not done any damage to the mattress, said he would not pay for the mattress, and again requested the opportunity to call a witness who he said could testify in support of his claim. *Id*. at 8. Defendant Brookman refused Plaintiff's request and ordered that Plaintiff be given 60 days in segregation. *Id*.

In January 2015, while Plaintiff was in segregation on suicide watch, Defendants Lashbrook (assistant warden), Eovaidi, and Murray approached Plaintiff and threatened that if he did not give up a DNA sample that they would send the Orange Crush team in to take it by physical force and "beat his ass." *Id*. Plaintiff protested and asserted that he had just had a disciplinary hearing on the issue and the committee had found that he had, in fact, provided a DNA sample in 2004. Plaintiff claims that Defendant Lashbrook said, "I don't give a fuck what the adjustment committee said I want your DNA and I'm going to get it from you one way or the other." *Id*. at 8-9. At some later date in January, Defendant Lashbrook returned to Plaintiff's

5

cell with Defendants Dunbar and Best. They removed Plaintiff from his cell and took him to an unknown location in the North II housing unit where they were met by members of the Orange Crush tactical team and Defendant Diercks. *Id*. at 8. Defendants then began assaulting Plaintiff by punching, kicking, and choking him. *Id*. Plaintiff passed out. He claims that when he woke up, Defendant Best was touching Plaintiff in the prostate area, which caused Plaintiff to ejaculate. *Id*. at 9 When this happened, Defendant Lashbrook laughed and told Plaintiff, "I told you I can get your DNA whether or not you chose to give it to me." *Id*. When Plaintiff began to cry, Defendant Lashbrook told him that he if he didn't want to get assaulted or sexually molested again, he had better go back to the Bureau and give up a sample of DNA because she already had his sperm. *Id*. Plaintiff states that based on this threat, he complied. *Id*. Following the incident, Plaintiff asserts that he requested medical treatment from Defendant Thompson, a nurse, but she refused to provide him any medical care. *Id*.

Plaintiff notified Internal Affairs of the incident. Defendant Hoff, an officer with Internal Affairs, told Plaintiff that he would interview him, but no interview or investigation ever took place. *Id*. at 10. Plaintiff also filed a complaint with the Illinois State Police regarding the physical and sexual assault. In addition, Plaintiff filed multiple grievances with Defendants Butler (warden) and Oakley (grievance counselor), which were denied. *Id*. Plaintiff also seeks to hold Defendant Keen, a member of the Administrative Review Board, liable for failing to properly address his grievances. *Id*. at 14.

Several months later, Plaintiff was transferred to Pontiac Correctional Center and interviewed by Internal Affairs regarding a Prison Rape Elimination Act ("PREA") claim that had been lodged against him by his former cellmate at Menard. *Id*. at 11. Plaintiff was later cleared of any wrongdoing, but he believes that this is evidence of conspiracy to use his DNA to

6

fabricate charges against him. *Id*.

Plaintiff is seeking monetary damages.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** First Amendment retaliation claim against Defendants Dunbar and Harris for threatening to make Plaintiff's life "hell" and Defendants Eovaidi, Dunbar, and Laminak for threatening to kill Plaintiff and put a "cold case" on him if he did not stop filing grievances and complaining about the conditions of his confinement.
>
> **Count 2:** Defendants Diercks, Dun, Lashbrook, Eovaidi, and Murray violated Plaintiff's rights under the First, Fourth, and Eighth Amendments when they demanded that Plaintiff submit a DNA sample without proof that an additional sample was required and threatened Plaintiff when he refused to comply.
>
> **Count 3:** Fourteenth Amendment due process claim against Defendant Brookman for finding Plaintiff guilty at the disciplinary hearing on December 30, 2014 on the first disciplinary ticket's charge of violating state law in the absence of any evidence in support of that conclusion.
>
> **Count 4:** Fourteenth Amendment due process claim against Defendant Brookman for refusing to call a witness at the disciplinary hearing on December 30, 2014 in support of Plaintiff's claim that the charges against him on his second disciplinary ticket were fabricated.
>
> **Count 5:** Eighth Amendment conditions of confinement claim against Defendants Laminak and Harris for their deliberate indifference to the conditions of Plaintiff's confinement (namely stripping him naked and turning off the water supply to his cell) while he was on suicide watch on December 26, 2014.
>
> **Count 6:** Eighth Amendment excessive force and/or failure to intervene claims against Defendants Lashbrook, Dunbar, Best, Diercks, and unknown members of

the Orange Crush team who physically and sexually assaulted Plaintiff and/or failed to prevent other Defendants from physically and sexually assaulting Plaintiff in January 2015 after he refused to provide a DNA sample.

**Count 7:** Fourth and Eighth Amendment unreasonable search and/or failure to intervene claims against Defendants Lashbrook, Dunbar, Best, Diercks, and unknown members of the Orange Crush team who extracted Plaintiff's sperm in a humiliating and invasive manner.

**Count 8:** Eighth Amendment denial of medical care claim against Defendant Thompson for refusing to provide medical attention to Plaintiff after he had been physically and sexually assaulted in January 2015.

**Count 9:** Failure to investigate claim against Defendants Hoff, Butler, Oakley, and Keen for failing to address the concerns raised in Plaintiff's grievances, complaints, and appeals.

As a preliminary matter, the Court notes that under Illinois state law, individuals convicted of certain crimes are required to provide a DNA specimen to the Illinois Department of State Police. The terms and conditions under which the DNA specimen is collected and held are set forth under 730 Ill. Comp. Stat. 5/5-4-3. According to 730 Ill. Comp. State 5/5-4-3(h)(i)(2), "In the event that a person's DNA specimen is not adequate for any reason, the person shall provide another DNA specimen for analysis. Duly authorized law enforcement and corrections personnel may employ reasonable force in cases in which an individual refuses to provide a DNA specimen required under this Act." There appears to be no dispute that Plaintiff previously provided a DNA specimen in 2004. The question then is whether that previously-provided specimen was not "adequate," and, if so, whether Defendants were required to provide Plaintiff with some documentation from the State Police that would verify the need for a second specimen. In addition, if Plaintiff was, in fact, required by state law to provide a second DNA specimen, was the alleged force used by Defendants to extract a semen sample reasonable?

These are questions that cannot be answered at this juncture. Therefore, accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that

8

Plaintiff has stated actionable claims against the named Defendants in **Counts 1-2 and 4-8**. Plaintiff may proceed on these claims against each of the named individuals. As for the unknown members of the Orange Crush Tactical Team (referred to by Plaintiff as John and Jane Does) named under Counts 6 and 7: these individuals must be identified with particularity before service of the complaint can occur on them. Where a prisoner's complaint states specific allegations describing the conduct of unknown corrections officers sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying the unknown parties will be set by the magistrate judge. Once the unknown parties are identified, Plaintiff shall file a motion to substitute the named individuals in their place.

**Claims Subject to Dismissal: Counts 3 and 9**

> **Count 3:** Fourteenth Amendment due process claim against Defendant Brookman for finding Plaintiff guilty at the disciplinary hearing on December 30, 2014 on the first disciplinary ticket's charge of violating state law in the absence of any evidence in support of that conclusion.

Plaintiff claims that Defendant Brookman denied his right to due process when he found Plaintiff guilty of the offense of violating a state law, despite a finding in the record that Plaintiff had complied with the law.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two-part inquiry: 1) was there a protected interest at stake that necessitated the protections demanded by due process; and 2) was

9

the disciplinary hearing process conducted in accordance with procedural due process requirements?

The first question then is whether a liberty interest was, in fact, at stake in the hearings. In *Sandin v. Conner,* 515 U.S. 472, 483-484 (1995), the Supreme Court held that liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Here, Plaintiff received a verbal reprimand. As such, even if the finding of guilt was arbitrary, there was no legally cognizable liberty interest at stake that would have triggered the procedural safeguards demanded by the due process clause.[1] Therefore, Plaintiff's due process claim against Defendant Brookman under **Count 3** shall be dismissed without prejudice.

> **Count 9:** Failure to investigate claim against Defendants Hoff, Butler, Oakley, and Keen for failing to address the concerns raised in Plaintiff's grievances, complaints, and appeals.

Lastly, Plaintiff objects to Defendants Hoff, Butler, Oakley, and Keen's handling of his grievances and complaints and he claims that Defendants' failure to respond to his grievances further deprived him of his rights.

The fact that a counselor, grievance officer, or even a supervisor received a complaint about the actions of another individual does not alone create liability. Instead, in order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc.*

---

[1] Plaintiff received 60 days in segregation on the second ticket, which is why the Court has allowed Plaintiff to proceed on his due process claim under Count 4. Although inmates generally have a limited liberty interest in avoiding segregation, *see Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013), the Seventh Circuit has noted that "a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Correction Inst.,* 559 F.3d at 697-98 (7th Cir. 2009) (collecting cases). Further development of the record is necessary to determine whether Plaintiff's confinement in segregation presented an "atypical" and "significant" hardship such that the due process clause was implicated as to the second disciplinary ticket.

*Servs.*, 436 U.S. 658 (1978). A grievance officer or supervisor may be held personally liable if she had actual knowledge of a constitutional deprivation, yet failed to intervene to address the violation. *See Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015); *see also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (reversing dismissal of claims against grievance officers). But the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct" cannot be a basis for liability under § 1983. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

As the Complaint currently stands, Plaintiff does not allege that any of the Defendants named under Count 9 had actual knowledge of the alleged constitutional violations at a time when they could have intervened on Plaintiff's behalf. Nor does Plaintiff claim that they caused or participated in the alleged unconstitutional conduct. **Count 9**, therefore, shall also be dismissed without prejudice.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) remains **PENDING** and shall be referred to United States Magistrate Judge Williams for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 3** and **9** are dismissed without prejudice for failure to state a claim upon which relief may be granted.

Defendants **HOFF, BUTLER, OAKLEY,** and **KEEN** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1-2** and **4-8**, the Clerk of Court shall prepare for Defendants **DUNBAR, BROOKMAN, DIERCKS, HARRIS, LASHBROOK, DUN, MURRAY, BEST, LAMINAK, EOVAIDI,** and **THOMPSON**: (1)

Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on **JOHN AND JANE DOES** (unknown members of the Orange Crush team) until such time as Plaintiff has identified this individual by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to

include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, which shall include a determination on Plaintiff's motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 26, 2016**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
